**E. D. NIXON et al., Plaintiffs,**

**Alabama Independent Democratic Party, a corporation, Plaintiff-Intervenor,**

**v.**

**Albert P. BREWER, as Governor of the State of Alabama, and his successors; Mabel Amos, as Secretary of the State of Alabama, and her successors; MacDonald Gallion, as Attorney General of Alabama, and his successors; the Democratic Party of Alabama and its governing body, the State Democratic Executive Committee of Alabama, through Robert S. Vance as Chairman, Defendants.**

**Civ. A. No. 3017-N.**

United States District Court,
M. D. Alabama, N. D.

March 4, 1970.

Morris Dees, Jr., Montgomery, Ala., Joseph J. Levin, Jr., Montgomery, Ala., Fred D. Gray, of Gray, Seay & Langford, Montgomery, Ala., Orzell Billingsley, Jr., Peter A. Hall, and C. H. Erskine Smith, Birmingham, Ala., for the plaintiffs.

David Vann, Birmingham, Ala., for plaintiff-intervenor.

Joseph D. Phelps, of Hill, Robison, Belser & Phelps, Montgomery, Ala., for the Governor and Secretary of State.

Gordon Madison, Asst. Atty. Gen., for the Attorney General.

Robert S. Vance, of Jenkins, Cole, Callaway & Vance, Birmingham, Ala., for the Democratic Party of Alabama, etc.

Before RIVES, Circuit Judge, and THOMAS and JOHNSON, District Judges.

## ON MOTION OF PLAINTIFFS FOR PRELIMINARY INJUNCTION
### and
## ON MOTION OF DEFENDANTS FOR DISMISSAL

### OPINION

PER CURIAM:

This is a class action filed on behalf of Negro citizens residing in what is called the "predominantly Negro ghetto area" in the three most populous counties of Alabama—Montgomery County, Mobile County and Jefferson County. The plaintiffs seek a preliminary and permanent injunction against the election of legislators, both Senators and Representatives, from these three counties on a county-at-large basis, because they claim that multi-member districting operates to minimize and cancel out the voting strength of Negroes residing in the predominantly Negro ghettos in said counties to the extent that they are deprived of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States and also in violation of the Fifteenth Amendment. The complaint further seeks a declaration of the unconstitutionality of Section 200 of the Constitution of Alabama requiring that no county be divided to create a legislative district; of the statute providing for the multi-member senatorial districts of the three counties;[1] and of the decree of this Court providing for the multi-mem-

---

1. Title 32, §§ 2 and 2(1) Code of Alabama (recompiled 1958), 1967 Supp.

ber house of representatives districts, and approving and adopting the multi-member senatorial districts of the three counties.[2]

All of the plaintiffs to the present action and the classes which they represent are within the broader class bound by the opinion and decree in Sims v. Baggett, n. 2, *supra*. That case undertook to completely reapportion the Alabama Legislature, both the House of Representatives and the Senate, effective with the term of office of the new legislative seats therein created to commence on the day after the General Election to be held in November 1966 and to remain in effect until after the next decennial census.[3]

At two places in the opinion it requires that "representation in each House be divided according to county lines and that no county be subdivided to create a legislative district." (247 F.Supp. 103, repeated at 105.) Thus the opinion forbids the kind of redistricting sought by the plaintiffs.

 Insofar as the complaint attacks the reapportionment or redistricting for the period covered by the opinion and decree of this Court, the complaint must be treated as an independent action seeking relief from a judgment under Rule 60(b), Fed.R.Civ.P. So treated, we think that the preliminary injunction should be denied for several reasons. The relief is not sought on the basis of newly discovered evidence or changed conditions since the date of the decree. While there have been further important developments in the applicable law,[4] basically the plaintiffs are undertaking to present the question which the Court held was not presented by the record in Fortson v. Dorsey, 1965, 379 U.S. 433, 439, 85 S.Ct. 498, 501, 13 L. Ed.2d 401:

"It might well be that, designedly or otherwise, a multi-member constituency apportionment scheme, under the circumstances of a particular case, would operate to minimize or cancel out the voting strength of racial or political elements of the voting population. When this is demonstrated it will be time enough to consider whether the system still passes constitutional muster. This question, however, is not presented by the record before us."

As to other aspects of the legislative reapportionment plan for the House of Representatives, that question was not only presented but was sustained in Sims v. Baggett.[5]

---

2. Sims, et al. v. Baggett, et al., decided on the 2nd day of October 1965, reported in 247 F.Supp. 96.

3. The Court's decree provides that "* * * the apportionment of the Alabama Legislature as herein ordered remain in effect without change, except by order of this Court, until the Legislature of the State of Alabama reapportions itself in accordance with the equal protection provisions of the Fourteenth Amendment to the Constitution of the United States, after the next decennial census to be conducted in 1970, which nothing in this decree shall prevent it from doing; the apportionment of the Alabama Legislature as herein ordered shall remain in effect without any change until such action by the Legislature which shall not occur prior to the next decennial census to be conducted in 1970."

4. See particularly Burns v. Richardson, 1966, 384 U.S. 73, 86 S.Ct. 1286, 16 L. Ed.2d 376 and Chavis v. Whitcomb, S.D. Ind., decided July 28, 1969, 305 F.Supp. 1364, appeal to the Supreme Court of the United States now being sought. [396 U.S. 1055, 90 S.Ct. 748, 24 L.Ed. 2d 757, 396 U.S. 1064, 90 S.Ct. 761, 25 L.Ed.2d 82].

5. "In Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401 (1965), the Supreme Court recognizes that multi-county, multi-representative districts, under the circumstances of a particular case, 'would operate to minimize or cancel out the voting strength of racial or political elements * * *.' The question was not raised on the record in that case. The court, therefore, held that 'under these circumstances, this issue has "not been formulated to bring it into focus, and the evidence has not

The present plaintiffs had an opportunity in Sims v. Baggett to raise the questions now presented but failed to do so. There was no objection at that time to this Court's holding "that no county be subdivided to create a legislative district" (247 F.Supp. 103, repeated at 105). The complaint in the present action was filed on January 13, 1970, more than four years after the judgment was entered in Sims v. Baggett, *supra,* and at such time that a three-judge district court could not be convened for the hearing of the application for preliminary injunction until February 25, 1970, only three days before the expiration of the date for filing notice of candidacy for nomination to office by the Democratic Party of Alabama, the predominant political party in said State. In our opinion the complaint was not filed "within a reasonable time" within the meaning of Rule 60(b), Fed.R.Civ.P.

The plaintiffs urge that by the use of the words "except by order of this Court" in the judgment or decree of Sims v. Baggett, *supra,* this Court reserved jurisdiction to change the judgment or decree. Assuming that we have such a discretion, we do not think that it should be exercised. Clearly, this Court should not itself subdivide a county for legislative representation during the period of time that it has enjoined the Legislature from so doing, because any such subdivision is, of course, primarily a legislative function.

Nor do we think that a proper case has been made for this Court to compel legislative action. The Supreme Court has recognized that "limitations on the frequency of reapportionment are justified by the need for stability and continuity in the organization of the legislative system." Reynolds v. Sims, 1964, 377 U.S. 533, 583, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506. The Supreme Court has further held that decennial reapportionment "would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation." *Id.,* 377 U.S. at 583, 584, 84 S.Ct. at 1393. The present reapportionment has remained in effect for less than half of the minimal ten-year period. After the completion of the 1970 census the Legislature can be expected with reasonable dispatch to reapportion both the House and the Senate in such a manner as will not deprive any voter of the equal protection of the laws as guaranteed by the Fourteenth Amendment. The earlier action here sought would necessarily be hasty and incomplete, as well as being based upon inadequate and uncertain factual evidence. Since the Legislature has complied with this Court's decree in Sims v. Baggett, *supra,* and has been enjoined by this Court from making any changes in the reapportionment therein ordered, we think it would be unreasonable and unwise to require any legislative reapportionment prior to the time fixed in that decree, that is, prior to the first legislative session following the completion of the 1970 decennial census. In our opinion this Court should deny the plaintiffs' motion for preliminary injunction.

However, we should also deny the defendants' motion to dismiss the complaint, retain jurisdiction of the complaint, and postpone a hearing on

been offered or appraised to decide it, our holding has no bearing on that wholly separate question." Wright v. Rockefeller, 376 U.S. 52, 58 [84 S.Ct. 603, 11 L.Ed.2d 512].' The Fortson case does not support the contention that multi-county, multi-representative districts are permissible regardless of their effect or the motive underlying their creation.

"In our opinion the present case falls squarely within the rationale of Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). The House plan clearly contravenes the Fourteenth and Fifteenth Amendments to the United States Constitution and must, therefore, be declared invalid." 247 F.Supp. at 110.

the merits, if any hearing should be necessary, until the Alabama Legislature has reapportioned the two Houses of the Legislature or has unreasonably failed in its duty so to do.

It would, of course, be premature for this Court to pass upon the factual or legal merits of the plaintiffs' complaint. In our opinion, however, the evidence offered in support of the plaintiffs' claims, if such evidence is substantiated by the 1970 decennial census and by the further evidence then available, makes out a strong case for the consideration of the Legislature of Alabama. Indeed, in all probability, this Court would grant some relief to the plaintiffs at this time but for the existence of the reasons heretofore stated for denial of the plaintiffs' motion for preliminary injunction.

If the multi-member election of legislators to the Alabama Legislature from any county on a county-at-large basis operates to minimize or dilute the voting strength of Negroes in said county to the extent that they are deprived of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States, then, of course, Section 200 of the Constitution of Alabama would in no way prevent the Legislature of Alabama from dividing the county into such separate legislative districts as might be needed to effect compliance with the Constitution of the United States. That is true because of the principle stated in Reynolds v. Sims, 1964, 377 U.S. 533, 584, 84 S.Ct. 1362, 1393, 12 L.Ed.2d 506, that "when there is an unavoidable conflict between the Federal and a State Constitution, the Supremacy Clause of course controls." Similarly, nothing said in this Court's opinion in Sims v. Baggett, supra, could prevent a county from being subdivided into separate legislative districts in order to effect compliance with the Constitution of the United States.

It would be premature for this Court to rule upon the plaintiffs' claims until after the 1970 decennial census and until after appropriate action by the Legislature of Alabama. If further action by this Court then appears appropriate, more exact factual information will be available and the legal and constitutional issues will be more sharply defined.

### ORDER

It is ordered and adjudged by this Court:

1. That the plaintiffs' motion for preliminary injunction be and the same is hereby denied;

2. That the defendants' motion to dismiss the complaint be and the same is hereby denied;

3. That the hearing on the merits of the case be postponed until the further order of this Court.